**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHRISTOPHER LEE WYCKOFF,:** | | |
| **Petitioner,** | : | |
| | : | **No. 1:20-cv-642** |
| **v.** | : | |
| | : | **(Judge Rambo)** |
| **D.K. WHITE,** | : | |
| **Respondent** | : | |

## MEMORANDUM

On April 21, 2020, *pro se* Petitioner Christopher Lee Wyckoff ("Petitioner"), who is currently confined at the Federal Correctional Institution Allenwood in White Deer, Pennsylvania ("FCI Allenwood"), initiated the above-captioned action by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. No. 1.) Petitioner challenges the decision of a Disciplinary Hearing Officer ("DHO") who found him guilty of a violation of Code 112, use of an intoxicant. (*Id.*) After Petitioner paid the requisite filing fee, the Court directed Respondent to show cause why Petitioner should not receive the relief he seeks. (Doc. No. 6.) On May 11, 2020, Petitioner filed a memorandum in support of his § 2241 petition. (Doc. No. 9.) After receiving a short extension of time (Doc. Nos. 14, 16), Respondent filed his response on May 28, 2020 (Doc. No. 17). Petitioner filed a motion for default judgment on June 1, 2020. (Doc. No. 18.) He filed his traverse on June 10, 2020.

(Doc. No. 19.)  For the following reasons, the Court will deny Petitioner's motion

for default judgment[1] and his § 2241 petition.

## I.   BACKGROUND

On June 16, 2019, a staff member at FCI Allenwood was making rounds and

saw Petitioner unresponsive and shaking on his bunk.  (Doc. No. 17-1 at 6.)

Responding staff members thought that Petitioner was having a seizure and placed

him on a gurney to be transported to FCI Allenwood's hospital services.  (*Id.*)

During transport, Petitioner admitted to two (2) staff members, by shaking his head

up and down, that he had smoked something.  (*Id.*)  When asked what he had

smoked, Petitioner responded, "I don't know."  (*Id.*)  During his subsequent medical

assessment, Petitioner was unable to control his extremities and demonstrated

slurred speech and uncontrolled motor function.  (*Id.*)  He was again asked what he

had taken but denied taking anything unauthorized.  (*Id.*)  Petitioner claimed that he

had been trying to fix a radio and suffered a seizure.  (*Id.*)  At the time, Petitioner's

medical records showed no history of seizures.  (*Id.*)  Registered Nurse ("RN")

---

[1] Petitioner maintains that he is entitled to a default judgment because Respondent failed to respond to his § 2241 petition by May 27, 2020.  (Doc. No. 18 at 5.)  As noted above, Respondent received an extension of time until May 29, 2020 and filed his response on May 28, 2020.  The response, therefore, is timely.  Even if it were not, "a default judgment is not contemplated in habeas corpus cases."  *See Aziz v. Leferve*, 830 F.2d 184, 187 (11th Cir. 1987); *see also Gordon v. Duran*, 895 F.2d 610, 612 (9th Cir. 1990) ("The failure to respond to claims raised in a petition for habeas corpus does not entitled the petitioner to a default judgment.").

Hamilton also noted that Petitioner "has no medical conditions or prescribed medication that would cause him to act in this manner." (*Id.*)

Later that day, Lieutenant Freas completed Incident Report 3268556, charging Petitioner with a violation of Code 112, use of an intoxicant. (*Id.*)  A copy of the Incident Report was provided to Petitioner on June 17, 2019. (*Id.*)  Petitioner was advised of his rights, including his right to remain silent. (*Id.* at 7.)  Petitioner indicated that he understood his rights and stated: "It wasn't drugs, I have seizures!" (*Id.*)

On June 20, 2019, Petitioner appeared before the Unit Discipline Committee ("UDC"). (*Id.* at 6.)  The UDC referred the Incident Report to the DHO for further proceedings based on the severity of the offense. (*Id.*)  Petitioner signed an acknowledgment of his receipt of the Inmate Rights at Discipline Hearing form. (*Id.* at 51.)  Initially, Petitioner requested C. Gore to serve as his staff representative. (*Id.* at 52.)  He also requested that inmate Greene appear as a witness on his behalf. (*Id.*)

Petitioner appeared before the DHO on August 22, 2019. (*Id.* at 3.)  At the beginning of the hearing, Petitioner was advised that C. Gore was unavailable but that she had submitted Petitioner's medical records from FCI Elkton and FCI Allenwood. (*Id.*)  Petitioner "said he did not want to delay the hearing and wanted to waive the appearance of Nurse Practitioner Gore and proceed without

representation." (*Id.*)  Petitioner also advised the DHO that he no longer wanted inmate Greene to appear as a witness on his behalf.  (*Id.*)  Petitioner did not provide any documentary evidence.  (*Id.*)  He provided the following statement:

> I don't use drugs.  I went to pill line about 8:20 pm.  I came back and laid down.  I asked a buddy to get me a drink of water.  I had been working on a radio before I went to pill line.  I was putting it away when I started feeling dizzy and laid down; I had a seizure.  The next thing I remember is them asking me the President.  I said Trump and build that wall.

(*Id.*)

The DHO found the charge of Code 112 to be supported by the greater weight of the evidence.  (*Id.* at 4.)  In doing so, the DHO considered the Incident Report, video surveillance, memoranda from various staff members, photographs, and portions of Petitioner's medical records.  (*Id.*)  The DHO rejected Petitioner's assertion that he had suffered a seizure, finding him to be not credible and "a provider of false information." (*Id.* at 5.)  The DHO sanctioned Petitioner with thirty (30) days of disciplinary segregation, disallowance of forty (40) days of good conduct time, and six (6) months' loss of e-mail, visitation, and non-contact visitation privileges.  (*Id.*)  Petitioner received a copy of the DHO's report on August 29, 2019.  (*Id.*)  Petitioner subsequently exhausted his administrative appeals regarding this Incident Report.

Petitioner then filed the instant § 2241 petition.  (Doc. No. 1.)  In his petition, Petitioner argues that his due process rights were violated because: (1) he was denied the right to present a defense by presenting the results from lab tests; (2) the DHO ignored medical records indicating that he has a history of seizures; (3) the DHO committed fraud by changing the date on which Petitioner had a clinical encounter at FCI Elkton; and (4) the DHO "commit[ted] the discipline hearing to unethical practices." (*Id.* at 6-8; Doc. No. 9 at 5.)  As relief, Petitioner requests that the forty (40) days of good conduct be restored, the DHO's decision be reversed, and the Incident Report be expunged.  (Doc. No. 1 at 8.)

## II.   DISCUSSION

Liberty interests protected by the Fifth Amendment may arise either from the Due Process Clause itself or from statutory law.  *Torres v. Fauver*, 292 F.3d 141 (3d Cir. 2002).  It is well settled that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply."  *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).  Nevertheless, the Supreme Court has held that that there can be a liberty interest at stake in disciplinary proceedings in which an inmate loses good conduct time.  *Id.* at 557.  Because Petitioner's sanctions included the loss of good conduct time, he has identified a liberty interest.

5

In *Wolff*, the Supreme Court set forth the following minimum procedural due process rights to be afforded to a prisoner accused of misconduct in prison which may result in the loss of good time credit: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in his defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action. *Wolff*, 418 U.S. at 563-67. The Supreme Court has held that the standard of review about the sufficiency of the evidence is whether there is "any evidence in the record that could support the conclusion reached by the disciplinary board." *Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985); *see also Griffin v. Spratt*, 969 F.2d 16, 19 (3d Cir. 1992). If there is "some evidence" to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff. *Hill*, 472 U.S. at 457. The *Hill* standard is minimal and does not require examination of the entire record, an independent analysis of the credibility of the witnesses, or even a weighing of the evidence. *See Thompson v. Owens*, 899 F.2d 500, 501-502 (3d Cir. 1989).

6

The BOP's inmate disciplinary procedures are codified at 28 C.F.R. § 541, *et seq*., and entitled *Inmate Discipline and Special Housing Units*.  These procedures are intended to meet or exceed the due process requirements prescribed by the Supreme Court.  *See Von Kahl v. Brennan*, 855 F. Supp. 1413, 1418 (M.D. Pa. 1994).  Pursuant to these regulations, staff shall prepare an Incident Report when there is reasonable belief that a violation of BOP regulations has been committed by an inmate and the staff considers informal resolution of the incident inappropriate or unsuccessful.  28 C.F.R. § 541.5.  Under the regulations, an inmate "*ordinarily* receives[s] the incident report within 24 hours of staff becoming aware of . . . involvement in the incident."  *Id.* § 541.5(a) (emphasis added).  The incident is then referred to the UDC for an initial review pursuant to § 541.7.

The UDC review/hearing is "ordinarily [held] within five work days after [the incident report] is issued" and does not include the initial day staff learns of the incident, weekends or holidays.  *Id.* § 541.7(c).  If the UDC finds that a prisoner has committed a prohibited act, it may impose any of the available sanctions set forth in 28 C.F.R. § 541.3 (Tables 1 and 2) except loss of good conduct time, disciplinary segregation, or monetary fine.  *Id.*  If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in

the greatest severity category, the UDC must refer the matter to a DHO for a hearing.
*Id.*

A DHO "will only conduct a hearing on the incident report if referred by the UDC." 28 C.F.R. § 541.8.  An inmate will receive written notice of the charges 24 hours before the DHO hearing unless the inmate waives the notice requirement in which case the DHO can conduct the hearing sooner.  *Id.*  The inmate is permitted to have a staff representative at the hearing and entitled to make a statement and present documentary evidence.  *Id.*  After the hearing, the DHO will either: (1) find the inmate committed the prohibited act or similar one described in the incident report; (2) find the inmate did not commit the prohibited act charged; or (3) refer the incident report back for further investigation, review and disposition.  *Id.*  If an inmate is found to have committed a prohibited act, the DHO can impose any of the available sanctions listed in Table 1 and 2 of § 541.3.  *Id.*  Finally, the written report or decision of the DHO will contain the following: (1) whether the inmate was advised of his or her rights during the proceedings; (2) the evidence relied on by the DHO; (3) the DHO's finding of guilt or innocence; (4) the sanctions imposed; and (5) the reasons for the sanctions imposed.  *Id.*

### A.     Petitioner Received His Due Process Rights

Contrary to Petitioner's arguments, he received his procedural due process rights under *Wolff* and the BOP regulations.   The record reflects that Petitioner received a copy of the Incident Report on June 17, 2019, and the hearing before the DHO was held on August 22, 2019.  (Doc. No. 17-1 at 3, 6.)  Initially Petitioner requested C. Gore as his staff representative and inmate Greene to appear as a witness on his behalf.  (*Id.* at 52.)  At the hearing, however, Petitioner was advised that Gore was not available and chose to proceed without a staff representative.  (*Id.* at 3.)  He also notified the DHO that he no longer wanted inmate Greene to appear as a witness.  (*Id.* at 4.)  Petitioner received a copy of the DHO's written decision, which included a review of the evidence relied upon and the rationale behind the disciplinary action, on August 29, 2019.  (*Id.* at 5.)

In his § 2241 petition, Petitioner suggests that his due process rights were violated when the DHO refused to consider the results of laboratory testing, including a breathalyzer test, urinalysis, and blood tests.  (Doc. No. 1-1 at 7.) Petitioner maintains further that the suspected drug paraphernalia was sent to a laboratory for testing.  (*Id.*)  According to Petitioner, all of these tests returned negative results for drugs or intoxicants.  (*Id.*)  To the extent that Petitioner believes this documentation was exculpatory evidence, the United States Court of Appeals

for the Third Circuit has noted that the "[United States Court of Appeals for the] Seventh Circuit . . . has held that the rule of *Brady v. Maryland* requiring the disclosure of material exculpatory evidence applies to prison disciplinary proceedings." *Donahue v. Grondolsky*, 398 F. App'x 767, 772 (3d Cir. 2010) (citing *Chavis v. Rowe*, 643 F.2d 1281, 1285-86 (7th Cir. 1981)).

Nothing in the record, however, supports Petitioner's assertion that his request for consideration of this evidence was denied. In his decision, the DHO specifically indicated that "no documentary evidence was provided for consideration." (Doc. No. 17-1 at 3.) Petitioner has not cited any evidence to the Court that suggests otherwise. Accordingly, the Court concludes that Petitioner's due process rights were not violated by the alleged refusal to consider documentary evidence. *See Laor v. Fed. Bureau of Prisons*, No. 08-3532 (RBK), 2009 WL 1410728, at *6 (D.N.J. May 15, 2009) (concluding that the inmate-petitioner was mot denied an opportunity to present documentary evidence at his disciplinary hearing because "there [was] no indication in the DHO Report that he made any specific request[s] for documents that were denied"); *see also Gomez v. Warden FCI Allenwood*, No. 1:20-cv-455, 2020 WL 2556916, at *4 (M.D. Pa. May 20, 2020) (citing *Laor* for the conclusion that the inmate-petitioner's request for video surveillance was not denied because

nothing in the record supported the petitioner's assertion that he requested such video).

Petitioner suggests further that the DHO violated his due process rights by relying on fraudulent information in his decision. (Doc. No. 1 at 8.)  Specifically, Petitioner takes issue with the following line: "A Clinical Encounter was completed by Sherry Penwell on June 28, 2019 (ELK), wherein [Petitioner] requested detox from K2 ad Suboxone.  [Petitioner] told her he smoked "Deuce" every day, all day and took Suboxone every other day."  (Doc. No. 17-1 at 4-5.)  Petitioner asserts that this clinical encounter actually took place on June 28, 2018 and that the DHO deliberately changed the date and "twisted the [existence] of this information to better serve his needs at the Disciplinary Proceeding."  (Doc. No. 1-1 at 11.) Specifically, Petitioner maintains that the DHO changed the date to "try and make it look like [Petitioner] had asked for a detox program while at LSCI Allenwood." (Doc. No. 1 at 8.)  Petitioner is correct that the clinical encounter with Penwell took place on June 28, 2018, not June 28, 2019.  (Doc. No. 17-1 at 46.)  Nothing in the record, however, supports Petitioner's assertion that this is anything more than a typographical error, and "a typographical error in the reports is not the foundation of a due process violation contemplated by *Wolff*."  *Staine v. Oddo*, No. 3:16-cv-265, 2017 WL 228135, at *6 (M.D. Pa. Jan. 19, 2017); *see also Millhouse v. Warden*

*Lewisburg USP*, 785 F. App'x 931, 935 (3d Cir. 2019) (concluding that a reference incorrectly referring to the inmate-petitioner by the wrong first name was nothing more than a typographical error).

In sum, Petitioner's claims that his due process rights were violated by an alleged refusal by the DHO to consider documentary evidence and because of a typographical error in the DHO's report lack merit.  For the reasons discussed above, the Court finds that Petitioner received all the due process procedures to which he was entitled.

### B.     The DHO's Decision Was Based on Sufficient Evidence

With respect to the sufficiency of the evidence, Respondent has attached to his response the Incident Report, the DHO Report, memoranda prepared by T. Walter, J. Betz, and RN Hamilton, photographs of Petitioner and items recovered by his bunk, and Petitioner's medical records.  (Doc. No. 17-1.)  These documents unequivocally establish that there was some evidence supporting the DHO's decision.

The DHO stated the following in his decision finding Petitioner guilty of Code 112, use of an intoxicant:

> [Petitioner's] involvement in the incident, as noted in Section 11 of Incident Report Number 3268556 was reviewed.  Paraphrased, E. Freas declared on June 19, 2019, at 2036, a medical emergency was called for Lycoming A, Cube 17.  In this, Officer J. Betz was making

rounds and found [Petitioner] on his bunk, unresponsive and shaking. Responding staff believed the inmate may be having a seizure. [Petitioner] was put on a gurney for transport to health services. Freas further noted [Petitioner], while in transport, admitted to him and Officer T. Walter that he had smoked something, by shaking his head up and down. When asked what he had smoked, [Petitioner] said "I don't know." [Petitioner] was not able to control his extremities during his medical assessment, while having slurred speech and uncontrolled motor function. The inmate was asked several times what he ingested and he denied taking anything unauthorized. He further said he had been trying to fix a radio and had a seizure. Noted, his medical records did not show a history of seizures. As part of her assessment, Registered Nurse Hamilton cited [Petitioner] had no medical condition or prescribed medication that would cause him to act in "this" manner and could be the result of smoking or ingesting a foreign substance.

Further inculpatory evidence in the form of a memorandum from J. Betz, noting on June 16, 2019, at about 2036, he was making rounds in Lycoming A Unit and heard an inmate wailing. Upon investigating the sound, he came across cell 17, which had a large number of inmates gathered around. Betz saw [Petitioner] in the cell shaking and unresponsive to commands. Betz also saw a "hollowed out pen" on [Petitioner's] chest [and] a razor blade on the floor next to his bank. Further, a battery and the parts to the pen on top of his locker. T. Walter completed a memorandum which signified he responded to Lycoming A, cell 17 in this case and aided Lieutenant[] E. Freas in escorting [Petitioner] via "hospitals ambulance," during which time the inmate admitted to smoking something that he was not able to describe. [] S. Hamilton completed a memorandum citing her assessment of [Petitioner] on June 16, 2019. In [a] physical review of him, his medical records and his prescribed medication, she found no medical reason for his "erratic" behavior and it may have been result of [Petitioner] ingesting, smoking, or inhaling a foreign substance. Photographs of [Petitioner], a pen housing, razor blade and battery were reviewed. A Health Screening was completed by Donald Cavanaugh, Physician's Assistant . . . on June 1, 2018 (ELK). In this [Petitioner] was noted as denying any history of seizures. A Clinical Encounter was completed by Sherry Penwell on June 28, 201[8] (ELK), wherein

13

[Petitioner] requested detox from K2 and Suboxone.  [Petitioner] told her he smoked "Deuce" every day, all day and took Suboxone every other day.  A Health Screening by Registered Nurse A. Yordy on May 28, 2019 (ALF), revealed [Petitioner] denying any seizures, or IV drug use.  A Medical History and Physical completed by Catherine Gore, Nurse Practitioner, on June 4, 2019 (ALF), revealed [Petitioner] claimed a seizure history since age 32, but he had never had a "work up," with his last seizure in July 2018.  Further, IV drug use was noted. A Clinical Encounter by Jay Miller, MD, on June 6, 2018 (ALF), did not document any seizure issues or medications for such.  A June 16, 2019 (ALF)[] Clinical Encounter completed by Susan Hamilton, RN, indicated her assessment on the date of incident in this case was for possible seizure activity of [Petitioner].  Upon the inmate's arrival to Health Services, he was awake and verbal, but unable to follow instructions.  Nurse Hamilton concluded, [Petitioner's] medical history was reviewed and he had denied any seizure activity.

Upon questioning by the DHO, [Petitioner] denied the charge. He elaborated upon his plea by stating, "I don't use drugs.  I went to pill line about 8:20 pm.  I came back and laid down.  I asked a buddy to get me a drink of water.  I had been working on a radio before I went to pill line.  I was putting it away when I started feeling dizzy and laid down; I had a seizure.  The next think I remember is them asking me the President.  I said Trump and build that wall."  The DHO did not find [Petitioner's] testimony credible.  Although he claimed to have only had a seizure in this case, while in route to health services after being found in his cell in Lycoming A Unit by Officer Betz shaking and unresponsive, [Petitioner] advised both T. Walter and E. Freas he had smoked an unknown substance.   Given the fact known smoking materials were found on [Petitioner's] person and in his immediate area in his cell (an empty pen barrel for smoking or inhaling and a razor blade and battery used to create a heat source), the DHO believed it likely that he had smoked or inhaled some form of unknown intoxicating substance on June 16, 2019, at or about 2036.  The DHO believed [Petitioner's] shown history of claiming/not claiming seizures, as well as claiming/not claiming a history of illicit substance use only solidified him as a provider of false information.

14

After the consideration of evidence documented above, the DHO has drawn the conclusion the greater weight of the evidence, listed in the paragraphs above, supports the finding [Petitioner] committed the prohibited act of Use of an Intoxicant, Code 112, on June 16, 2019, at or about 2036, at LSCI Allenwood, PA.

(Doc. No. 17-1 at 4-5.)   Moreover, the DHO explained the imposed sanctions, stating:

[Petitioner's] behavior of smoking or inhaling some form of an intoxicating substance threatened not only his health, but the safety of staff responding to this incident.  Being in an altered state limits the ability of [Petitioner] to be involved in meaningful correctional programming.  Accordingly, disciplinary segregation and disallowance of good conduct time are sanctioned to punish the inmate for his misconduct, which loss of e-mail privileges may aid in deterring him and possibly other inmates from negatively acting out while incarcerated.

(*Id.* at 5.)

Petitioner suggests that the evidence was insufficient to support the DHO's finding because of his medical records suggesting a history of seizures. (Doc. No. 1 at 7.)  Petitioner further argues that the DHO failed to consider that some of the medications he takes may cause seizures as side effects and that he had been prescribed oxcarbazepine, a medication used to treat seizures.  (*Id.*)  However, when an inmate challenges the sufficiency of the evidence supporting the DHO's decision, "the 'some evidence' standard does not require . . . independent assessment of the credibility of witnesses or weighing of the evidence."  *Speight v. Minor*, 245 F.

App'x 213, 216 (3d Cir. 2007) (quoting *Hill*, 472 U.S. at 455-56); *see also Donahue*, 398 F. App'x at 772 (3d Cir. 2010) (noting that courts are not "required to re-weigh the evidence, or re-assess the credibility of [a petitioner's] defense"). In any event, the record before the Court indicates that the DHO did consider Petitioner's medical records. Upon review of those records, the Court concludes that the DHO correctly noted that petitioner had a "shown history of claiming/not claiming seizures, as well as claiming/not claiming a history of illicit substance use." (Doc. No. 17-1 at 5.) Moreover, the medical records indicate that Petitioner was prescribed oxcarbazepine for posttraumatic stress disorder, not seizures. (*Id.* at 34.) Additionally, RN Hamilton noted that upon review of Petitioner's medical records, she "found no medical reason nor has he been prescribed any medication that would cause him to display his erratic behavior." (*Id.* at 11.) In sum, contrary to Petitioner's suggestion, "some evidence" supports the DHO's conclusion that he was guilty of a violation of Code 112. *See Denny v. Schultz*, 708 F.3d 140, 145 (3d Cir. 2013) (noting that the Court "need only find that the [Hearing Officer's] decision had 'some basis in fact' in order to affirm the decision as comporting with the Due Process Clause"). Accordingly, the Court will deny his § 2241 petition.

## III.   CONCLUSION

For the foregoing reasons, the Court concludes that Petitioner was accorded all of his due process rights under *Wolff* and the BOP regulations, and that there was some evidence supporting the DHO's decision.  Accordingly, Petitioner's § 2241 petition (Doc. No. 1) will be denied.  Petitioner's motion for default judgment (Doc. No. 18) will also be denied.  An appropriate Order follows.


s/ Sylvia H. Rambo
United States District Judge

Dated:  June 17, 2020